UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANDREW J. MYERS,

                              Plaintiff,

v.                                                      5:10-CV-1167
                                                        (GTS/TWD)
CAMDEN CENT. SCH. DIST.;  BD. OF EDUC.
OF THE CAMDEN CENT. SCH. DIST.;
ROCCO LONGO, Former Superintendent of
Camden Sch. Dist; and RICHARD J. KEVILLE,
Superintendent of Camden Sch. Dist,

                              Defendants.

APPEARANCES:                                            OF COUNSEL:

O'HARA, O'CONNELL & CIOTOLI                             STEPHEN CIOTOLI, ESQ.
   Counsel for Plaintiff
7207 East Genesee Street
Fayetteville, NY 13066

LAW FIRM OF FRANK W. MILLER                             FRANK W. MILLER, ESQ.
   Counsel for Defendants                               JOHN A. SICKINGER, ESQ.
6575 Kirkville Road
East Syracuse, NY 13057

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this employment civil rights action filed by Andrew J.

Myers ("Plaintiff") against the Camden Central School District, Board of Education of the

Camden Central School District,[1] Rocco Longo, and Richard Keville ("Defendants"), are the

following two motions: (1) Defendants' motion to dismiss Plaintiff's Amended Complaint

pursuant to Fed. R. Civ. P. 12(c), 12(b)(6), and 12(b)(1); and (2) Plaintiff's cross-motion for

---

       [1]       The Camden Central School District and its Board, hereinafter referred to as
"Defendant District," are one and the same for purposes of this Decision and Order.  (Dkt. No.
20, at 5, n.1 [attaching page "1" of Defs.' Reply Memo. of Law].)

summary judgment pursuant to Fed. R. Civ. P. 56.  (Dkt. No. 12; Dkt. No. 18.)  For the reasons

set forth below, Defendants' motion to dismiss is granted, and Plaintiff's cross-motion for

summary judgment is denied.

## I.      RELEVANT BACKGROUND

### A.      Plaintiff's Amended Complaint

Plaintiff filed his original Complaint in this action on September 29, 2010.  (Dkt. No. 1.)

On November 10, 2010, Plaintiff filed an Amended Complaint.  (Dkt. No. 4.)  Generally,

liberally construed, Plaintiff's Amended Complaint alleges as follows.

On September 1, 2003, Defendant District granted Plaintiff tenure as a teacher of math.

(*Id*. at ¶ 13.)  On September 7, 2005, he was arrested and charged with sexual abuse in the third

degree, forcible touching, and endangering the welfare of a child under New York Penal Law §§

130.55, 130.52, and 260.10.   (*Id*. at ¶ 14.)  The criminal charges were predicated upon

allegations that Plaintiff inappropriately touched a member of the boys' varsity basketball team,

of which Plaintiff was the coach.   (*Id*. at ¶¶ 11, 15.)

The criminal charges were not disposed of until October 15, 2008, when Plaintiff pled

guilty to the lesser charge of harassment in the second degree under New York Penal Law §

240.26.   (*Id*. at ¶ 16.)  However, before the charges were disposed of, Defendants suspended

Plaintiff without pay or benefits (and without a hearing on any disciplinary charges) effective

September 19, 2005, in violation of New York Education Law § 3020-a.   (*Id*. at ¶¶ 19, 20, 27.)

This wrongful withholding of pay and benefits continued until February 12, 2008, when

Defendants terminated Plaintiff's employment pursuant to a process established by New York

Education Law § 3020-a.   (*Id*. at ¶¶ 13, 19, 20, 27, 32.)

2

Based on these factual allegations, Plaintiff asserts the following two claims against Defendants: (1) a claim that Defendants Longo and Keville deprived him of a protected property interest (in his contractual employment and tenure right under New York State law between September 19, 2005, and February 12, 2008) without due process, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment; and (2) a claim that Defendant District deprived him of a protected property interest (in his contractual employment and tenure right under New York State law between September 19, 2005, and February 12, 2008) without due process, in violation of 42 U.S.C. § 1983 and the Fourteenth Amendment. (*Id*. at ¶¶ 33-49.)

Generally, as relief for these alleged violations, Plaintiff seeks the following: (1) an award for all salary and benefits for a period of "approximately three . . . years" (apparently the period of September 19, 2005, to October 15, 2008, the date his plea was entered); (2) an award of compensatory damages of more than $1,000,000.00, for emotional distress and damage to reputation and career; (3) an award of interest; and (4) an award of attorney's fees and costs. (*Id*. at "Prayer for Relief.")

Familiarity with the claims, and supporting factual allegations, asserted in Plaintiff's Amended Complaint is assumed in this Decision and Order, which is intended primarily for review by the parties.

### B.    Defendants' Motion to Dismiss

Generally, in support of their motion to dismiss, Defendants assert the following four arguments: (1) Plaintiff's Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted, because it has alleged facts plausibly suggesting that Plaintiff's original Complaint was filed long after the expiration of the applicable one-year limitations period established by New York Education Law § 3813(2-b); (2) in the alternative, Plaintiff's

Amended Complaint must be dismissed for lack of subject-matter jurisdiction, because Plaintiff failed to timely and properly serve a notice of claim on Defendants as required by New York Education Law § 3813(1); (3) in the alternative, Plaintiff's claim against Defendants Longo and Keville must be dismissed for failure to state a claim upon which relief can be granted, because it has alleged facts plausibly suggesting that they are protected from liability as a matter of law by the doctrine of qualified immunity (given that they acted reasonably in asking Plaintiff to submit notice to them that he had resolved the legal impediment to him working at the District's high school, i.e., the Order of Protection, before they allowed him to resume employment in his previous position); and (4) Plaintiff's Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted, because it has alleged facts plausibly suggesting that Defendant District was not legally obligated to (a) pay Plaintiff for work he could not perform at his assigned school and/or (b) transfer him to another school in the District. (*See generally* Dkt. No. 14 [Defs.' Memo. of Law].)

Generally, in response to Defendants' motion, Plaintiff asserts the following three arguments: (1) the applicable statue of limitations is the three-year limitations period established by New York CPLR § 214 (which governs all claims brought pursuant to 42 U.S.C. § 1983), rather than one-year limitations period established by New York Education Law § 3813(1) (which governs only claims brought against district entities and officials pursuant to New York State law); (2) the notice-of-claim requirements established by New York Education Law § 3813(1) do not apply to federal constitutional claims brought pursuant to 42 U.S.C. § 1983; and (3) based on the factual allegations of Plaintiff's Amended Complaint, neither Defendant Longo nor Defendant Keville is entitled to qualified immunity, because the Order merely directed him to stay away from Student B.B. at a particular school (and thus he was able to work in one of the

4

District's various other schools, or the District's central offices, without violating the Order). (*See generally* Dkt. No. 18, Attach. 3 [Plf.'s Opp'n Memo. of Law].)

In his response to Defendants' motion to dismiss, Plaintiff does not specifically address Defendants' fourth above-described argument–that, based on Plaintiff's own factual allegations, regardless of whether or not he could legally step foot in a school other than the District's high school pursuant to the Order of Protection, Defendant District was not legally obligated to employ–and thus pay–Plaintiff for work outside of his scope of certification (i.e., Grade 7-12 Mathematics) at one of those schools. (*Id.*)  However, in support of his cross-motion for summary judgment, Plaintiff argues that Defendants' above-described argument is incorrect essentially because (1) the record evidence shows that Plaintiff could have worked in the District's middle school, located one mile away from the District's high school (as well as the District's central offices, located between the high school and middle school), and (2) the two cases cited by Defendants are inapplicable because they regarded teachers whose certifications had been wholly revoked (which is not the case here). (*Id.*)  To the extent that Plaintiff's second argument is based merely on the law and not on any record evidence, the Court will liberally construe it as responding to the above-described aspect of Defendants' motion to dismiss.

Generally in their reply, Defendants assert the following two arguments: (1) according to the relevant case law, the applicable statue of limitations is one year under New York Education Law § 3813(1), rather than three years under the New York CPLR § 214 (governing tort claims); and (2) because of the Order of Protection issued against Plaintiff–which may be considered by the Court on Defendants' motion to dismiss and which was never addressed by Plaintiff in his opposition to that motion–and because of the fact that Plaintiff was not legally able to perform his duties, Defendants Longo and Keville are indeed protected from liability as a matter of law

by the doctrine of qualified immunity.  (*See generally* Dkt. No. 20 [Defs.' Reply Memo. of Law].)

In addition, in their reply memorandum of law, Defendants argue–for the first time–that Plaintiff's Amended Complaint must be dismissed for failure to state a claim upon which relief can be granted, because that Amended Complaint has not alleged facts plausibly suggesting (1) the nature of his constitutionally protected property interest, (2) how they improperly deprived him of that interest, and (3) what direct involvement the Defendant District had in the conduct of Defendants Longo and Keville.  (*Compare* Dkt. No. 14 [Defs.' Memo. of Law] *with* Dkt. No. 20, at 11-12 [attaching pages "7" and "8" of Defs.' Reply Memo. of Law].)  While the Court understands that Defendants were prompted to make this argument as a result of an argument made by Plaintiff in support of his cross-motion for summary judgment, the thrust of Defendants' argument is not simply that Plaintiff's cross-motion should be denied, but that his Amended Complaint should be dismissed.  Such a new argument cannot fairly be sprung on a non-movant in a reply.  In particular, because sur-replies are not permitted under the District's Local Rules of Practice, Plaintiff did not have a fair opportunity to respond to this late-blossoming argument.  N.D.N.Y. L.R. 7.1(b)(1).  As a result, the Court will not consider this argument in this Decision and Order.

### C.    Plaintiff's Cross-Motion for Summary Judgment

Generally, in his cross-motion for summary judgment, Plaintiff asserts the following two arguments: (1) based on the admissible record evidence, there is no genuine dispute that Defendants were legally obligated to pay Plaintiff, despite the Order of Protection issued against him, because (a) the Order merely directed him to stay away from Student B.B. at a particular school (and thus he was able to work in one of the District's many other offices or schools other

than Student B.B.'s school without violating the Order), and (b) Plaintiff requested work in other offices or schools four times; and (2) Defendants' violation of the above-described legal obligation gives rise to a due process claim under the Fourteenth Amendment, because (a) his contractual employment and tenure right under New York State law give him a protected property interest under the Fourteenth Amendment, and (b) Defendants' non-compliance with New York Education Law § 3020-a constitutes a deprivation of Plaintiff's right to procedural due process.  (*See generally* Dkt. No. 18, Attach. 3 [Plf.'s Memo. of Law in Support of His Cross-Motion].)

Generally, in response to Plaintiff's cross-motion, Defendants argue that Plaintiff is not entitled to summary judgment because he has failed to adduced evidence removing any genuine dispute of material fact regarding whether he suffered deprivation of a constitutional or statutory right due to a custom or policy of Defendant District.  (*See generally* Dkt. No. 20 [Defs.' Memo. of Law in Opp'n to Plf.'s Cross-Motion].)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing Motion for Judgment on the Pleadings and Motion to Dismiss for Failure to State Claim

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim."  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001) (collecting cases).  For the sake of brevity, the Court will not recite, in this Decision and Order, the well-known legal standard governing dismissals for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), but will direct the reader to the Court's decision in *Bridgeforth v. Popovics,* 09-CV-0545, 2011 WL 2133661, at *2-4 (N.D.N.Y. May 25, 2011) (Suddaby, J.), which accurately recites that standard.

The Court would add only two points.  First, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[2]

Second, generally, "[a] motion to dismiss on the basis that an action is barred by the statute of limitations is analyzed under Federal Rule of Civil Procedure 12(b)(6), not 12(b)(1)." *Garner v. DII Indus., LLC*, 08-CV-6191, 2010 WL 456801, at *1 (W.D.N.Y. Feb.4, 2010) (citing *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 [2d Cir. 1989]).

---

[2]      *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, No. 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . . However, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.") [internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (internal quotation marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may nevertheless take the document into consideration in deciding [a] defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

**B.      Legal Standard Governing Motion to Dismiss for Lack of Subject-Matter Jurisdiction**

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d at 113).

**C.      Legal Standard Governing Motion for Summary Judgment**

Because the parties to this action have demonstrated, in their memoranda of law, an accurate understanding of the legal standard governing motions for summary judgment, the Court will not recite that  well-known legal standard in this Decision and Order, but will direct the reader to the Court's recent decision in *Pitts v. Onondaga County Sheriff's Dep't*, 04-CV-0828, 2009 WL 3165551, at *2-3 (N.D.N.Y. Sept. 29, 2009) (Suddaby, J.), which accurately recites that legal standard.

**D.      Legal Standards Governing Plaintiff's Claims**

Section 1983 provides, in pertinent part, "Every person who . . .subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and laws*, shall

be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term "the Constitution and laws" refers to United States Constitution and *federal* laws.[3]   A violation of a state law, *in and of itself*, does not give rise to liability under 42 U.S.C. § 1983.[4]

Having said that, it is true that a state statute (by securing certain benefits and supporting claims of entitlement to those benefits) may create, and define the dimensions of, a property interest.[5]  "Although the underlying substantive interest is created by an independent source such as state law, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause."  *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) [internal quotation marks omitted].  "To have [such] a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [Furthermore, he] must have more than a unilateral expectation of it."  *See Bd. of Regents of*

---

[3]      *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983 make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the defendant has deprived him of a right secured by the 'Constitution and laws' *of the United States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added); *Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the Constitution and laws' *of the United States*.") [emphasis added].

[4]      *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990) ("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state employee's failure to conform to state law does not in itself violate the Constitution and is not alone actionable under § 1983 . . . .") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

[5]      *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("[Property interests protected by the Fourteenth Amendment] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law–rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.").

10

*State Colls.,* 408 U.S. at 577.  For example, under this standard, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).

Moreover, of course, the existence of such a protected property interest does not end the Court's examination.  This is because "[courts] examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  Again, the violation of a state statute (including its procedural requirement) does not, in and of itself, mean that there has been a violation of the Constitution (including denial of what process was due under the Fourteenth Amendment).  *See, supra*, note 4 of this Decision and Order; *see also, e.g., McCreery v. Babylon Union Free Sch. Dist.,* 827 F. Supp. 136, 138-39 (E.D.N.Y. 1993) (balancing "competing interests at stake," not simply relying on process required by state statute, in determining how much process was due under the Fourteenth Amendment).

### E.    Legal Standard Governing Affirmative Defense of Qualified Immunity

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).  As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable [official] that his conduct was

unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) [citations omitted], *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) [citations omitted].

In determining the second issue (i.e., whether it would be clear to a reasonable official that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) [citations omitted], *cert. denied*, 503 U.S. 962 (1992).[6] "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) [citations omitted].[7] This "objective reasonableness" part of the test is met if "officers of

---

[6]     *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[7]     *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") [citation omitted]; *Davis v. Scherer*, 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

reasonable competence could disagree on [the legality of defendant's actions]."  *Malley v.*

*Briggs*, 475 U.S. 335, 341 (1986).[8] As the Supreme Court has explained,

> [T]he qualified immunity defense . . . provides ample protection to all
> but the plainly incompetent or those who knowingly violate the law.
> . . . Defendants will not be immune if, on an objective basis, it is
> obvious that no reasonably competent officer would have concluded
> that a warrant should issue; but if officers of reasonable competence
> could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[9]

## III.    ANALYSIS

### A.    Whether Plaintiff's Amended Complaint Should Be Dismissed for Failure to State a Claim Based on the Applicable Statute of Limitations

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiff's opposition memorandum of law: the applicable statue of

limitations is the three-year limitations period established by New York CPLR § 214 (which

governs all claims brought pursuant to 42 U.S.C. § 1983), rather than one-year limitations period

established by New York Education Law § 3813(1) (which governs only claims brought against

district entities and officials pursuant to New York State law).  (Dkt. No. 18, Attach. 3, at 12-13

[attaching pages "8" and "9" of Plf.'s Opp'n Memo. of Law].) The Court would only two points.

First, in addition to relying on the cases cited by Plaintiff, the Court relies on numerous

other cases, which the Court finds to be more instructive.  *See Brown v. City of New York*, 10-

CV-6491, 2011 WL 2693677, at *9 (S.D.N.Y. July 11, 2011) ("State . . . statutes of limitations

[such as those established by New York Education Law § 3813] apply to *state law* claims

---

8       *See also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y.
1995) [citing cases]; *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

9       *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity
standard gives ample room for mistaken judgments by protecting all but the plainly incompetent
or those who knowingly violate the law.") [internal quotation marks and citation omitted].

brought in federal court."); *see, e.g., Rausa v. Bd. of Educ. of the N. Syracuse Cent. Sch. Dist.*,

11-CV-1152, 2012 WL 967052, at *1, 8 (N.D.N.Y. March 21, 2012) (McAcoy, J.) (finding, in

case involving some claims brought under 42 U.S.C. § 1983, only that "New York Education

Law § 3813(2-b) requires claims against a school district brought *under the [State] Human*

*Rights Law* to be commenced within one year," and that "§ 1983 claims are subject to a three

year statute of limitations") [emphasis added]; *Smith v. New York City Dept. of Educ.*, 09-CV-

9256, 2011 WL 5118797, at *4 (S.D.N.Y. Oct. 28, 2011) ("Smith's . . . First Amendment

retaliation claims [brought pursuant to 42 U.S.C. § 1983] are governed by a three-year statute of

limitations. . . . Under state law, claims against the [the Board of Education] or any of its officers

[specifically, under the City Human Rights Law or State Human Rights Law] must be brought

within one year [pursuant to New York Education Law § 3813(2-b)] . . . .") [internal citations

omitted]; *Klein v. City of New York*, 10-CV-9568, 2011 WL 5248169, at *8-9 (S.D.N.Y. Oct. 28,

2011) ("Klein's claims under 42 U.S.C. §§ 1983 and 1985, Title VI, and Title IX, must be

brought within three years, pursuant to New York State's personal injury statute. . . .  Klein's

non-federal claims against the [Department of Education] are subject to the [one-year] statutes of

limitations provided in New York Education Law § 3813."); *Baroor v. New York City Dept. of*

*Educ.*, 06-CV-3965, 2009 WL 959537, at *6, 8 (E.D.N.Y. Apr. 3, 2009) ("The statute of

limitations for § 1983 claims brought in New York is three years . . . . [T]he one-year statute of

limitations prescribed in N.Y. Educ. Law § 3813(2-b) applies to NYSHRL employment

discrimination claims brought against school districts.") [citation omitted].[10]

---

[10]     *See also Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 08-CV-3140, 2011
WL 5856409, at *22 (S.D.N.Y. Nov. 21, 2011) (finding, in case involving some claims brought
under 42 U.S.C. § 1983, only that "Kwait's conduct occurred more than one year before Plaintiff
filed her Complaint in July 2008. . . .  Therefore, all claims against the [Board of Education]
under the [State Human Rights Law] and the [City Human Rights Law] must be dismissed
[under New York Education Law 3813(2-b)]"); *Rosenburg v. City of New York*, 09-CV-4016,

Second, the Court notes that, even when it construes Plaintiff's Amended Complaint with the utmost of special leniency, it does not construe that Amended Complaint as asserting *any* claims arising under New York State law.  In any event, even if the Court did so construe Plaintiff's Amended Complaint, the Court would dismiss only those claims and not Plaintiff's federal claims based on New York Education Law § 3813(2-b).

For all of these reasons, the Court finds that Plaintiff's Amended Complaint survives Defendants' statute-of-limitations argument.

**B.     Whether Plaintiff's Amended Complaint Should Be Dismissed for Lack of Subject-Matter Jurisdiction Due to Plaintiff's Failure to Timely and Properly Serve a Notice of Claim on Defendants**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 18, Attach. 3, at 14-15 [attaching pages "10" and "11" of Plf.'s Opp'n Memo. of Law].) The Court would add only two points.

First, the Court notes that, in their reply memorandum of law, Defendants do not attempt to distinguish, or even address, the cases cited by Plaintiff in his opposition memorandum of law standing for the point of law that compliance with the notice-of-claim requirement established by New York Education Law § 3813(1) is not mandatory with regard to claims brought pursuant to 42 U.S.C. § 1983.  (*See generally* Dkt. No. 20 [Defs.' Reply Memo. of Law].)

---

2011 WL 4592803, at *15 (E.D.N.Y. Sept. 30, 2011) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that "any State or City law claim brought against it is barred by the applicable statute of limitations [under New York Education Law § 3813(2-b)]"); *Flaherty v. Massapequa Public Sch.*, 752 F. Supp.2d 286, 292 (E.D.N.Y. 2010) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that "[t]he applicable statute of limitations for all state law claims brought against a school district, a school board, or a school board member is one year [under New York Education Law § 3813(2-b)]").

Second, in addition to relying on the above-mentioned cases cited by Plaintiff, the Court relies on numerous other cases. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir.1999) ("[I]n a federal court, state notice-of-claim statutes apply to state-law claims. . . .  On the other hand, when a federal action is brought in federal court, the court has discretion to borrow from state law when there are deficiencies in the federal statutory scheme. . . . While the absence of a notice-of-claim provision generally does not render a federal statute deficient. . . , we will apply such a provision to a federal action where there is evidence that Congress intended us to do so.") [internal citations omitted]; *see, e.g., Robinson v. Roosevelt Union Free Sch. Dist.*, 10-CV-0834, 2012 WL 1980410, at *11 (E.D.N.Y. May 31, 2012) ("These notice of claim requirements [established by, *inter alia*, New York Education Law § 3813(1)] apply to *state* law claims . . . .") [emphasis added]; *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp.2d 601, 634 (E.D.N.Y. 2011) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that "[i]n federal court, state notice-of-claim statutes [including New York Education Law § 3813] apply to *state*-law claims") [emphasis added].[11]

---

[11]     *See also Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 08-CV-3140, 2011 WL 5856409, at *22 (E.D.N.Y. Nov. 21, 2011) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that "the [Board of Education] [cannot] be held liable under the [State Human Rights Law] or the [City Human Rights Law]" due to the fact that "nothing in the record indicates that Plaintiff served a notice of claim on the [Board of Education] within the requisite three months" under New York Education Law § 3813[1]); *Smith v. New York City Dept. of Educ.*, 808 F. Supp.2d 569, 583 (S.D.N.Y. 2011) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that, "because [plaintiff] failed to comply with the notice of claim requirements [established by New York Education Law § 3813(1)], [his] state law claims must be dismissed."); *Spencer v. Holley Cent. Sch. Dist.*, 734 F. Supp.2d 316, 320 (W.D.N.Y. 2010) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that, "[i]n light of her failure to comply with [the notice-of-requirement established by] N.Y. Educ. Law § 3813, plaintiff's claims arising under the New York Human Rights Law must be dismissed"); *Augustin v. Enlarged City Sch. Dist. of Newburgh*, 616 F. Supp.2d 422, 445-46 (S.D.N.Y. 2009) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that, "plaintiff's state law claim brought under New York Executive Law § 296 [is dismissed]" because of plaintiff's failure to comply with the notice-of-claim requirement established by New York Education Law § 3813); *Santiago v. Newburgh Enlarged City Sch. Dist.*, 434 F. Supp.2d

For all of these reasons, the Court finds that Plaintiff's Amended Complaint survives Defendants' notice-of-claim argument.

### C.   Whether Plaintiff's Claims Against Defendants Longo and Keville Should Be Dismissed for Failure to State a Claim Based on the Doctrine of Qualified Immunity

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 14, at 11-12 [attaching pages "7" and "8" of Defs.' Memo. of Law]; Dkt. No. 20, at 7-10 [attaching pages "3" through "6" of Defs.' Reply Memo. of Law].) The Court would only add the following four points.

First, it is true that, "usually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted). However, as Defendants point out, the qualified immunity defense may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." *McKenna*, 386 F.2d at 435.

Second, the Court finds that, pursuant to the legal standard described above in Part II.A. of this Decision and Order, it may consider the following discrete documents in deciding Defendants' motion to dismiss for failure to state a claim without converting that motion into one for summary judgment: (1) the Order of Protection issued against Plaintiff on September 7, 2005, and continued against Plaintiff on April 4, 2007, which may be the subject of judicial

193, 196 (S.D.N.Y. 2006) (finding, in case involving some claims brought under 42 U.S.C. § 1983, only that, none of plaintiff's state law claims is cognizable because the plaintiff has not filed a notice of claim in connection therewith [in compliance with New York Education Law § 3813).

notice pursuant to Fed. R. Evid. 201,[12] and which was provided and not disputed by the parties;[13]

(2) Defendant Longo's letter to Plaintiff dated September 12, 2005, which was referenced in

and/or is integral to Plaintiff's Amended Complaint,[14] and which was provided and not disputed

by the parties;[15] (3) Defendant Longo's letter to Plaintiff dated September 15, 2005, which was

referenced in and/or is integral to Plaintiff's Amended Complaint,[16] and which was provided and

not disputed by the parties;[17] (4) Defendant Longo's letter to Plaintiff dated June 27, 2006, which

was referenced in and/or is integral to Plaintiff's Amended Complaint,[18] and which was provided

---

[12]    *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court ... to establish the fact of such litigation and related findings.") [internal quotation market and citation omitted]; *accord, Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir.1992); *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir.1991); *see, e.g., Reed v. Alexander*, 05-CV-0236, 2008 WL 3155310, at *1 n. 3 (N.D.N.Y. Aug. 4, 2008) (Singleton, J.) (taking judicial notice of an opinion docketed in a Western District of New York case to ascertain facts underlying the habeas petitioner's conviction); *City of Amsterdam v. Daniel Goldreyer, Ltd.*, 882 F. Supp. 1273, 1278-79 (E.D.N.Y. 1995) ("[T]his Court is required to take judicial notice of the pending state court action.").

[13]    (*See* Dkt. No. 13, at 7 [Ex. A to Sickinger Affirm.]; Dkt. No. 18, Attach. 1, at 120-21 [Ex. H to D'Imperiod Affid.].)

[14]    (*See* Dkt. No. 4, at ¶ 17 ["[A]fter Plaintiff's arrest [on September 7, 2005], the District effectively suspended the Plaintiff by excluding him from District premises of all the District's property and assigning him to perform temporary curriculum work at home. This assignment continued until September 16, 2005."].)

[15]    (*See* Dkt. No. 13 Attach. 1, at 9 [Ex. B to Sickinger Affirm.]; Dkt. No. 18, Attach. 1, at 66 [attaching page "2" of Ex. C to D'Imperio Affid.].)

[16]    (*See* Dkt. No. 4, at ¶ 18 ["This request [for a transfer on September 14, 2005] was denied, and Plaintiff was advised that there were no vacancies in his tenure area."].)

[17]    (*See* Dkt. No. 18, Attach. 1, at 70 [attaching page "6" of Ex. C to D'Imperio Affid.].)

[18]    (*See* Dkt. No. 4, at ¶ 24 ["Longo informed Plaintiff that his request [for a transfer] was denied by letter dated June 27, 2006, without discussion or reason."].)

and not disputed by the parties;[19] (5) Defendant Keville's letter to Plaintiff dated January 11, 2007, which was referenced in and/or is integral to Plaintiff's Amended Complaint,[20] and which was provided and not disputed by the parties;[21] (6) Defendant Keville's letter to Plaintiff dated November 6, 2007, which was referenced in and/or is integral to Plaintiff's Amended Complaint,[22] and which was provided and not disputed by the parties;[23] and (7) the Agreement Between the Superintendent of Schools for the Camden Central School District and the Camden Teachers' Association, effective from July 1, 2005, to June 30, 2009, which was referenced in and/or is integral to Plaintiff's Amended Complaint,[24] and which was provided and not disputed by the parties.[25]

Third, based on the above-described documents (Plaintiff's other factual allegations), the right in question (i.e., the right to continued pay under the circumstances) was not clearly established during the time in question (or even now).  In arguing that the right in question was clearly established, Plaintiff relies on the language in New York Education Law § 3020-a providing that "[t]he suspension [of a tenured employee pending the filing of, and the conducting

---

[19]    (*See* Dkt. No. 18, Attach. 1, at 76 [attaching page "12" of Ex. C to D'Imperio Affid.].)

[20]    (*See* Dkt. No. 1, at ¶ 25 ["However, this request [for a transfer on January 8, 2007] was also denied, this time by Keville in a letter dated January 11, 2007."].)

[21]    (*See* Dkt. No. 18, Attach. 1, at 78 [attaching page "14" of Ex. C to D'Imperio Affid.].)

[22]    (*See* Dkt. No. 4, at ¶ 26 ["This request [for a transfer on October 9, 2007] was denied by Keville on November 6, 2007."].)

[23]    (*See* Dkt. No. 18, Attach. 1, at 83 [attaching page "19" of Ex. C to D'Imperio Affid.].)

[24]    (*See* Dkt. No. 4, at ¶¶ 23, 35, 42.)

[25]    (*See* Dkt. No. 18, Attach. 1, at 17-63 [Ex. B-2 to D'Imperio Affid.].)

of a hearing on, disciplinary charges] shall be with pay, except the employee may be suspended without pay if the employee has entered a guilty plea to or has been convicted of a . . . a felony crime involving the physical abuse of a minor or student."  N.Y. Educ. Law § 3020-a(2)(b).  In so arguing, Plaintiff implicitly, if not expressly, assumes that the withholding of his pay was both (1) part of a suspension and (2) pending the disposition of disciplinary charges.  The problem is that Plaintiff's assumption is erroneous, based on his own factual allegations.

According to Plaintiff's own factual allegations, he was never expressly suspended but only "effectively" suspended.  (Dkt. No. 4, at ¶¶ 17, 27.)  Moreover, when he was first "effectively" suspended on or about September 7, 2005, it was *with pay* (and thus allegedly in accordance with New York Education Law § 3020-a).  (Dkt. No. 4, at ¶¶ 17, 19 [alleging that he was paid between the period of September 7, 2005, to September 19, 2005].)  It was only after Defendant Longo learned that Plaintiff could not return to work due to the Order of Protection (and Plaintiff's temporary work assignment at home ended), that Plaintiff was taken off the payroll.  (Dkt. No. 4, at ¶¶ 19-20; Dkt. No. 13 Attach. 1, at 9 [Ex. B to Sickinger Affirm.].)  Indeed, no disciplinary charges for the conduct in question were pending–or even expressly threatened–when Plaintiff was taken off of the payroll.  (*See, e.g.,* Dkt. No. 4, at ¶ 21 ["As of September 23, 2005, the Board had failed to bring any charges against Plaintiff pursuant to New York Education Law § 3020-a."]; *cf. id.* at ¶ 13 ["Plaintiff remained in this position until the termination of his employment on February 12, 2008, pursuant to a 3020-a process which was begun by the defendant Board on behalf of the District."].)

This important fact–that Plaintiff was taken off of the payroll not because of a suspension based on disciplinary charges but simply because he was not working–is further supported by the fact that none of the letters from Defendants Longo to Plaintiff mention "suspension" but the fact that an Order of Protection prohibited Plaintiff from reporting to his current assignment at the

high school.  (Dkt. No. 18, Attach. 1, at 70, 76 [attaching pages "6" and "12" of Ex. C to

D'Imperio Affid.].)  It is also supported the fact that Plaintiff's solution to being taken off of the

payroll was to repeatedly request a transfer to the Camden Middle School (where he clearly

believed he would be placed back on the payroll if he could secure a position).  (Dkt. No. 4, at ¶¶

18, 25, 26.)

        Simply stated, according to Plaintiff's own factual allegations, rather than being part of a

suspension based on disciplinary charges, the taking of Plaintiff off of the payroll was caused by

(1) his inability to teach mathematics at Camden High School "for the foreseeable future" (i.e.,

the remainder of Student B.B.'s matriculation there) due to the Order of Protection, and (2)

either (a) the unavailability of a vacant position as a math teacher at Camden Middle School at

the time of his application, or (b) his undesirability as a candidate for such a vacant position as

compared to other qualified applicants (based, in part, on there pending against him both an

Order of Protection and serious criminal charges of "sexually abusing a Camden student,

forcibly touching him, and endangering the welfare of a minor").  (Dkt. No. 18, Attach. 1, at 70,

76, 78, 83 [attaching pages "6," "12," "14" and "19" of Ex. C to D'Imperio Affid.].)

        By relying on New York Education Law § 3020-a, Plaintiff is essentially attempting to

use the statute, which ordinarily appears to be a shield (that protects, inter alia, a tenured

employee's qualified right to continued pay, i.e., during disciplinary hearing-related

suspensions), as a sort of sword (to assert that a tenured employee has an absolute right to

continued pay, i.e., even if he can effectively no longer work in the district).  This appears to be

a misuse of New York Education Law 3020-a.

        The primary rationale for the continuation-of-pay requirement contained in New York

Education Law 3020-a is the fact that it would be arbitrary to, as a form of discipline, stop

paying a suspended teacher who has tenure (and thus who presumably is fit to carry on his or her

professional responsibilities) based merely on the fact that he or she has been charged, in a

disciplinary proceeding, with being unfit to carry on his or her professional responsibilities.[26]

However, that rationale does not apply where, as here, (1) there was no express suspension, or

even an express threat of the filing of disciplinary charges for the conduct in question, (2)

regardless of the filing and disposition of any such disciplinary charges, an Order of Protection

prevents the tenured teacher from carrying on his professional responsibilities at a particular

school during the remainder of a student's matriculation there, and (3) either (a) work within the

teacher's area of certification is unavailable at other schools in the district or (b) the teacher is an

undesirable candidate as compared to other qualified candidates for a transfer to any such

available position (based, in part, on there pending against him both the Order of Protection and

serious criminal charges of sexually abusing a student in the school district).[27]

Indeed, cases exist for the point of law that, even if there has been a violation of New

York Education Law § 3020-a, there has been no violation of the Fourteenth Amendment's Due

Process Clause if sufficient post-deprivation process is given within a reasonable time period.

*See, e.g., Matter of Jerry v. Bd. of Educ. of City Sch. Dist. of City of Syracuse*, 35 N.Y.2d 534,

541 (N.Y. 1974) ("[S]uspension of a tenured teacher without pay pending the final determination

---

[26]     *See, e.g., Holt v. Bd. of Ed. of Webutuck Cent. Sch. Dist.,* 52 N.Y.2d 625, 439
N.Y.S.2d 839, 842-43 (N.Y. 1981) ("The purpose of [N.Y. Educ. Law § 3020-a] is to protect
teachers from arbitrary imposition of formal discipline."); *Bott v. Bd. of Ed., Deposit Cent. Sch.
Dist.*, 41 N.Y.2d 265, 268 (N.Y. 1977) ("[The] primary function [of disciplinary charges] is not
punitive, but rather the determination of the fitness of the teachers against whom they may be
brought to continue to carry on their professional responsibilities . . . .") [citations omitted].

[27]     *Cf. McElroy v. Board of Educ. of Bellmore-Merrick Cent. Sch. Dist.*, 783 N.Y.S.
781, 785 (N.Y. Sup. Ct., Nassau Cnty. 2004) ("The actions of respondent in reassigning [school
football coaches to non-teaching positions for district to conduct inquiry into allegations of
sexual abuse among team members where no disciplinary charges had been filed against
coaches] does not constitute discipline within the meaning of Education Law § 3020 so as to
require the filing of charges and right to hearing provided by Education Law § 3020–a and due
process considerations.").

of section 3020-a disciplinary proceedings, provided such determination is not unreasonably delayed, would involve no infringement of the teacher's constitutional rights . . . .") [citations omitted].  Granted, here, Plaintiff alleges that a disciplinary hearing did not occur until on or about February 12, 2008.  (Dkt. No. 4, at ¶ 13.)  However, Plaintiff also expressly alleges that, between October 18, 2005, and November 2, 2005, he was able, through the Camden Teachers Association, to grieve the alleged "fact that the District had effectively discharged Plaintiff from his teaching responsibilities without pay."  (*Id*. at ¶¶ 22-23.)

It is worth noting that this is *not* a case in which a teacher could not work at a school because the district knowingly assigned him to work at a location to which it knew he could not legally report.  *See Diggins v. Honeoye Falls-Lima Cent. Sch. Dist.*, 856 N.Y.S.2d 396, 396-97 (N.Y. App. Div., 4th Dept., 2008).  Rather, this is a case in which a teacher was assigned to work at a location and *then* chose to engage in conduct that legally prevented him from reporting to that location.  In any event, *Diggins* was decided by the Fourth Department on April 25, 2008, and thus fails to render the claimed right clearly established during the time in question.

Because Plaintiff cannot rely on  New York Education Law § 3020-a to show that the claimed right was clearly established during the time in question, he must turn to the relevant Agreement Between the Superintendent of Schools for the Camden Central School District and the Camden Teachers' Association to do so.  However, pursuant to the Agreement, the superintendent possesses discretion in deciding whether or not to transfer a tenured teacher to a vacancy in another school in the district.[28]  In addition, pursuant to the Agreement, the

---

[28]     (Dkt. No. 18, Attach. 1, at 28 [attaching Paragraph B of Article XI of the Agreement, which provides, "All vacancies . . . shall be posted for not less than five (5) work days in all schools in the district; all qualified teachers shall be given *the opportunity to apply* for such vacancies"]) [emphasis added]; *cf.* Dkt. No. 18, Attach. 1, at 28 [attaching Paragraph H of Article XXXIII of the Agreement, which confers on a tenured teacher returning from an unpaid leave of absence the right, if seniority permits, to "be assigned to the same position which was

superintendent possesses discretion in deciding whether or not to continue to pay tenured

teachers who are absent for "personal business" for more than five days per school year for

"unforeseen circumstances beyond the control of the teacher."[29]  These facts fatally diminish the

legitimacy of Plaintiff's expectation of such a transfer and/or continued pay, and thus any

constitutionally protected property interest in that transfer and/or continued pay under the

circumstances.  *See, supra,* Part II.D. of this Decision and Order.[30]

Fourth, and finally, even if the claimed right had been clearly established during the time

in question, based on Plaintiff's own factual allegations, school officials of reasonable

competence could have disagreed on the legality of the actions of Defendants Longo and

Keville.  It should be remembered that, absent special circumstances, all parents are required by

law to send their children to school.  *See* N.Y. Educ. Law § 3205(1)(a).  For Defendants Longo

and Keville to knowingly transfer to Camden Middle School a teacher against whom serious

charges of sexual abuse were pending (and against whom an Order of Protection had been issued

with regard to a student at another school in the District) would arguably be for Defendants

---

held at the time the leave commenced, or if that position is no longer in existence, to a substantially equivalent position if seniority permits," but only if the unpaid leave of absence was granted "by the Board of Education as recommended by the Superintendent"].)

[29]      (Dkt. No. 18, Attach. 1, at 28 [attaching Paragraph B.4. of Article XXXIII of the Agreement, which provides, "At the discretion of the Superintendent or his designee, teachers who have exhausted their annual paid personal/family leave allowance may be allowed additional paid personal leave in the event of emergency or unforeseen circumstances beyond the control of the teacher").

[30]      As a result, cases finding a constitutionally protected property interest to continued pay appear clearly distinguishable from Plaintiff's case.  *See, e.g., McCreery v. Babylon Union Free Sch. Dist.,* 827 F. Supp. 136, 138 (E.D.N.Y. 1993) (finding that a tenured teacher possessed a constitutionally protected property interest in continued pay because the pay had been terminated *during the pendency of an administrative hearing* pursuant to New York Education Law § 3020-a, not because the pay had terminated because the teacher was no longer able to work in the district).

Longo and Keville to knowingly place in harm's way the students of Camden Middle School (who were younger and presumably less capable of protecting themselves than the students of the high school).[31]  Should that teacher then sexually abuse a student at Camden Middle School, it is conceivable that such a knowing transfer could be deemed to have been reckless so as to result in a finding of liability against those two Defendants and/or the District.  *See Doe v. Warren Consolidated Sch.*, 93 F. App'x 812, 819-23 (6th Cir. 2004) (finding that superintendent's decision to transfer teacher who had allegedly engaged in improper touching of students at middle school to elementary school, where he allegedly sexually abused three students, amounted to deliberate indifference to students' due process right to be free from sexual abuse, in students' action under 42 U.S.C. § 1983).

It is worth noting that a somewhat analogous situation arose in the case of *Jackson v. B. of Educ., Colton-Pierrepont Cent. Sch. Dist.*, 598 N.Y.S.2d 842 (N.Y. App. Div., 3d Dept., 1993).  In that case, a tenured school teacher at a junior-senior high school was issued an order of protection directing him to stay away from that junior-senior high school (where his daughter attended).  *Jackson*, 598 N.Y.S.2d at 843.  After suspending petitioner with pay for a period of time, the superintendent suspended him without pay.  *Id*.  In response to the teacher's subsequent letter announcing that he was ready, willing and able to work (presumably elsewhere in the district), the superintendent responded that, due to the order of protection, it did not appear as if petitioner could perform his duties.  *Id*.  The teacher then announced his resignation, and sued

---

[31]     *See Weisman v. Mogol*, 462 N.Y.S.2d 383, 387 (N.Y. Sup. Ct., Nassau Cnty., 1983) ("The children, being considerably younger and less sophisticated, may not be intellectually capable of protecting themselves from unjust, unreasonable, or improper treatment; they may be afraid to do so; or they may not even recognize such treatment (e.g. children left in an unattended classroom may consider the occasion an opportunity for a romp).  A teacher's failure in such circumstances may result in findings of liability against the school district, the cost of which will ultimately be borne by its taxpayers.").

for the pay he did not receive between the time of his date of his suspension without pay and the date of his resignation pursuant to New York Education Law § 3020-a.  *Id.*  Petitioner argued that he was wrongfully suspended without pay pending the outcome of a disciplinary hearing, while respondent argued he was not suspended but simply not paid because he could not report for work.  *Id.*  While the case was not decided on the merits of the teacher's claim (but was dismissed for lack of jurisdiction due to his failure to comply with the notice-of-claim requirement established by New York Education Law § 3813[1]), *see id.* at 843-44, the fact that a superintendent took such action, that his lawyers made such an argument to the Third Department, and that the argument presented an issue that was not so frivolous as to lend itself to a ready resolution by the Third Department would appear to support the conclusion that district school officials of reasonable competence could disagree on the legality of the actions of Defendants Longo and Keville.

For all of these reasons, Plaintiff's claims against Longo and Keville are dismissed.

**D.    Whether Plaintiff's Claims Against Defendant District Should Be Dismissed for Failure to State a Claim Due to Their Lack of Legal Obligation to (1) Pay Plaintiff for Work He Could Not Perform at His Assigned School and/or (2) Transfer Him to Another School in the District**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 14, at 12 [attaching page "8" of Defs.' Memo. of Law].)  The Court would only add the following four points.

First, as the Court explained above in Part III.C. of this Decision and Order, pursuant to the legal standard described above in Part II.A. of this Decision and Order, the Court may consider the numerous discrete documents in deciding Defendants' motion to dismiss for failure to state a claim without converting that motion into one for summary judgment.

26

Second, as the Court explained above in Part III.C. of this Decision and Order, according to those documents (and Plaintiff's other factual allegations), the taking of Plaintiff off of the District's payroll was caused not simply by his inability to teach mathematics at Camden High School but by either (a) the unavailability of any vacant positions as a math teacher at Camden Middle School during the time of his application for such a position, or (b) his relative undesirability as a candidate for that position compared to other candidates.  Under such circumstances, New York Education Law 3020-a does not confer on him an absolute right to pay.[32]

Third, as the Court explained above in Part III.C. of this Decision and Order, Plaintiff did not possess, for purposes of a Fourteenth Amendment procedural due process claim, a legitimate expectation of a transfer to Camden Middle School based on the relevant Agreement Between the Superintendent of Schools for the Camden Central School District and the Camden Teachers' Association, under the circumstances alleged.

Fourth, to the extent that Plaintiff argues that he possessed a legitimate expectation of a transfer to work in the District's central offices (which were located even closer to the high school than was the middle school), the Court rejects that argument as unsupported by both the factual allegations of the Amended Complaint and the law.  *See, e.g., David v. Sch. Dist. of City of Niagara Falls*, 772 N.Y.S.2d 180, 181 (N.Y. App. Div., 4th Dept., 2004) ("Defendants established that plaintiff's request to transfer to another position when plaintiff's position was eliminated was properly denied because the positions to which plaintiff requested to be transferred are not 'similar' to his former position . . .  The positions are in different tenure areas and require different certifications . . . .").

---

[32]    Furthermore, even if he did have such a right, the denial of that right does not give rise to a constitutional violation where, as here, sufficient post-denial process was afforded within a reasonable time period.  *See, e.g., Matter of Jerry*, 35 N.Y.2d at 541.

For all of these reasons, Plaintiff's claims against Defendant District are dismissed.  The Court notes that, because it cannot consider Defendants' argument that Plaintiff has failed to allege facts plausibly suggesting what direct involvement the Defendant District had in the conduct of Defendants Longo and Keville (*see* Part I.B. of this Decision and Order), the Court has *not* based its conclusion on a finding that Defendants Longo and/or Keville's isolated act of taking Plaintiff off of the payroll conduct was not caused by a policy or custom of the District, for purposes of *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).  The Court would add only that such a finding would serve as an alternative ground for the dismissal of Plaintiff's claims against Defendant District.  *See City of Oklahoma v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which can be attributed to a municipal policymaker.").

### E.     Whether Plaintiff's Motion for Summary Judgement Should Be Denied

After carefully considering the matter, the Court answers this question in the affirmative for three alternative reasons.  First, Plaintiff's cross-motion has been rendered moot by the dismissal of his Amended Complaint.  Second, the Court is persuaded by reasons stated in Defendants' opposition memorandum of law.  (Dkt. No. 20, at 12-14 [attaching pages "8" through "10" of Defs.' Memo. of Law in Opp'n to Plf.'s Cross-Motion].)  Third, because discovery has not been completed, the motion is premature.  (*Compare* Dkt. No. 11 [Uniform Pretrial Scheduling Order filed on Feb. 3, 2011, setting discovery deadline as Nov. 30, 2011] *with* Text Order filed on March 22, 2011 [staying discovery pending resolution of Defendants' recently filed motion to dismiss].)

Based on each of these three alternative grounds, Plaintiff's cross-motion is denied.

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Amended Complaint (Dkt.

No. 12) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's cross-motion for summary judgment (Dkt. No. 18) is

**DENIED**; and it is further

**ORDERED** that Plaintiff's Amended Complaint (Dkt. No. 4) is **DISMISSED**. The Clerk

of the Court is directed to enter judgment in favor of the Defendants and close this case.

Dated: July 17, 2012
      Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge